QCV Quincy Bioscience Good morning, Your Honor. I please the Court. William Escobar on behalf of the Quincy appellants. Congress and the New York Legislature in the statutes that police advertising do align. An advertiser is only liable for materially misleading advertising. No materiality, no liability. After 10 years of investigation, litigation, and a 12-day jury trial, the eight jurors and the district court concluded that the New York Attorney General and the FTC had failed to establish a critical element of materiality with respect to six of the eight advertising claims by Quincy with respect to privacy. As the district court put it, Quincy was acquitted on those six statements. Therefore, Quincy has zero liability for those six statements. Now, the district court, nevertheless, fashioned an extraordinary nationwide permanent injunction that punishes Quincy with respect to the six acquitted statements. And then it enhanced that punishment by... Didn't the jury find that the six statements were deceptive? No, Your Honor. Deceptiveness requires a finding of materiality. The jury found that there was no materiality established with respect to those six statements, so they are not deceptive.  If misleading is being used synonymously with deceptive, I would disagree with it. But an advertisement that is misleading does not reach the level of liability being deceptive because that requires materiality as to a reasonable consumer. Now, the district court's injunction rests on three major areas. Mr. Escobar, would you help me locate where the materiality requirement is with respect to the FTC Act claims? Yes, Your Honor. So I think it's in, if you look at Section 15. Well, Section 5 of the FTC Act deals with deceptive acts, likely to mislead. It may not use the word materiality. So let me acknowledge that it's Section 10B of the Exchange Act, which has different components, one of which is a deceptive scheme. That is a scheme, the fraud is deceptive. There's a separate requirement of materiality. So I think what you're doing, but correct me if you think I'm wrong, is completing deception as an element with materiality as an element. No, Your Honor. And I don't see a materiality specifically outlined in the federal scheme. So Section, first Section 5 talks about deceptive acts. Section 12 and Section 15, which deals with false advertising, talk about misleading in a material respect. Okay. So deception, legal deception where liability attaches, only happens when there is a material misrepresentation or omission. What was the claim here? Was it a Section 5 claim? Yes, Your Honor. Okay. And under Section 5? It was Section 5 and 12. Okay. So you're saying that the Section 12 has the word material?  Section 12 and 15, I believe it's in 15, that talks about misleading in a material respect. Okay. And I'm sorry, the violation, alleged violation the jury found, was Section 5 and Section 12? They were instructed on Section 5, Section 12. They were instructed on the parallel New York general business law statutes, which also deal with material omissions. So materiality, and this is materiality. The argument that you're making is that we should import into Sections 5 and 12 the materiality element that appears in a separate section. Is that the argument? No, the argument, Your Honor, is that for advertising to rise to the level of deception, deception both in the statutes and in the statements made by the FTC, including in a policy statement in 1983, materiality is an essential element to establish deception. And the reason that I ask the question by analogy to the Exchange Act, excuse me, the Exchange Act, is that when Congress wants to add materiality, which is a big issue, right, potentially, to a particular statutory scheme or a statute, it knows exactly how to do it in the statute. And what you're telling me is, well, look at another statute that was not the basis for the claims here, 5 and 12 were the basis. No, I'm pointing you to the very statutes that are designed to deal with false advertising. And that's an important question because advertising is also protected commercial speech. The materiality element draws an important line so that the only liability that attaches, the only time you cross the line into deception is when you have a statement that materially misleads, that is likely to induce a consumer. So sometimes the statute talks about likelihood of inducing. So the statutes are quite clear, Your Honor, that in false advertising, materiality is an element. And on top of that, as it has been applied by the FTC and by New York, materiality relates to the effect on a reasonable consumer. Those are important elements that, by the way, are then imported into the other New York statute that the New York Attorney General used in this case, Executive Law 6312. Does Executive Law, that Executive Law, does that set forth a separate cause of action? Does a cause of action be found in that? Or does Executive Law merely talk about the New York Attorney General's ability to bring such a case under the general business law? Your Honor, our view of 6312 is that it's a quite limited procedural standing statute that was put in place so the Attorney General could march into New York State court, quickly stop a fraudulent scheme with a preliminary injunction that would be granted on fairly lenient grounds because some of the elements of common law fraud were not, you didn't have to show them in the likelihood of success. So our view is that it, on its face, is a very limited statute. When you look at the statute... What's a very limited statute? I'm sorry? What are you saying is a very limited statute? So, 6312 on its face is, first of all, it's part of a statutory scheme giving power to the New York Attorney General. One power that it gives is on five days' notice, through a special proceeding, you can go into court and get an injunction, a preliminary injunction to stop some fraudulent scheme while the litigation goes on about whatever the claims are. That's what the statute says. It has been used much more broadly than that by the New York Attorney General. And I think the reason for that is when you read the statute, it has two prongs, illegality and fraud. In this case... This is a very simple question. He's talking about the statute. Is that in the executive law or in the general business law? Executive law. In the executive law. And the executive law is frequently used alongside either 349 or 350 or the general business law. Correct. And your argument about 6312 is that it just, in essence, gives the Attorney General more remedial powers but doesn't affect the substantive law. Am I right in that? Am I right about that? Yes, Your Honor, and it's remedial powers and also the ability to move very quickly. Five days' notice, get an injunction. So you were about to tell us why the Attorney General is incorrect in arguing that the language of the statute suggests otherwise because of the two prongs and because of the definition of fraud. Right. So in their complaint in this case, there's one count related to 6312, and it talks about illegality and fraud. So both of those elements of the statute are pled in the complaint. Now, this is important because illegality means you're referring to another statute or another set of statutes. In this case, general business law 349 and 350. The illegality prong that they're alleging imports into 6312 all the elements of the general business law, including materiality and including materiality to a reasonable consumer. And I don't think they really contest that part of the argument. The fraud argument is described as whether the conduct has a tendency to deceive. Broad term. But last year in the Trump, People v. Trump case, the first department did a very deep, exhaustive and exhausting dive into 6312, focusing, for example, on materiality. When you work through all the decisions and the justices did not agree on much, but they agreed on materiality being an important element that has to be considered here. Is this something that you're talking about Is this something that should be certified to the Court of Appeals so we get the ruling on New York law rather than having to rely on a divided intermediate court? I think both parties have suggested that as a sort of catch-all suggestion. My view on this, Your Honor, is that the law is clear enough on the statute and what the first department said and what other cases have said on a couple of things. One, there's no issue at all that when you plead illegality as the New York AG did here, that that imports the elements of the Predicate Act statutes. There's no dispute about that. You mean 349 and so on? Right. The general business law statutes, okay. Right, 349 and 350 are the other ones they pled here. So how do we make sense of those cases as I understand it in New York law where an executive law, 63, cause of action, let's put it that way, is allowed to proceed even though there is no Section 349, say, general business law cause of action, or that fails? So the vast majority of 6312 cases involve parallel statutes of some sort. The Martin Act, 349, 350, Commonwealth... Whatever it is, yes. Whatever. I think there is confusion within the courts among the departments, but I think the... Doesn't that beg for us to ask for court appeals? Nothing was at issue here in this case, Your Honor, because they pled illegality in their complaint. Illegality, there's no confusion at all because illegality imports the elements of the other statutes into the 6312 claim. So on that point, there's no confusion or debate. The confusion is whether the New York Attorney General can bring a stand-alone fraud case. No record... Why... You point this out, but I think there's nothing to prevent the Attorney General from pleading in the alternative because the language that you're pointing to in 6312 is disjunctive. Right? It's either a fraud-based act or some act that is... that rests on illegality, as you put it. Yes, they can plead alternatively. So if that's true, because you're making a claim about 6312 itself. Yeah, but... So my starting point, Your Honor, is 6312, the illegality prong that they pled. That one brings into play the statutes. There's no question about that and all the elements of those statutes, whatever they might be. The fraud prong that they also pled, if we look at the First Department decision in the Trump case, the justices looked squarely at the question of whether materiality is relevant to the 6312 stand-alone claim. The New York Attorney General has argued that 6312 fraud stand-alone does not have a materiality element. When you look at the Trump case, four of the justices found that materiality has to be considered in connection with a 6312 stand-alone claim. So from our position, to Your Honor's question, I don't think there's a need to go to the Court of Appeals on clarification because of the way they pled and the case was presented here. And when the case was presented, the judge actually instructed the jury that if they found no liability on the 349 and 350 GBL, they didn't even need to address the executive law claims. And there are cases that indicate... So I'm just... What do we... So there's Coventry first, there's Applied, Hard, and apparently some other cases in which the New York courts have recognized that the New York Attorney General can prevail under 6312 even where claims under the GBL 349 and 350 and so on fail. Precisely because they've got different elements, different standards, but maybe I misunderstood your argument. I agree with Your Honor because the departments, the appellate departments in New York have had differences of opinion on this. Well, there are three that have gone one way, one that's gone the other way. Yeah, and the one that went the other way, the first department that went in favor of, in the Trump entrepreneur case, actually was reversing a different view in an earlier case. And am I right that the trend, more recently, disfavors your position? In other words, the trend in New York is to view 6312 as a stand-alone without the bells and whistles that you're asking us to embrace. Is that right? The trend is as you describe it. However, first of all, that trend has nothing to do with the illegality prong that's part of this case. Second of all, on the stand-alone fraud case, what we now have from the first department doing a deep analysis of the question of whether 6312 requires some analysis of materiality. And four of the justices agreed that materiality has to be considered when you're dealing with the tendency to deceive. And the reason they arrived at that point is because they did a careful analysis of the origins of 6312, which is patterned on the Martin Act. And the Martin Act specifically requires materiality. The Martin Act, actually, does not necessarily require materiality. The first department, looking at that exact issue, indicated that materiality is what they said. This is looking at the question of whether materiality applies to a stand-alone fraud case. The court said, under the Martin Act, the determination of whether conduct has a tendency to deceive or mislead the purchasing public necessitates that the attorney general establish, among other things, a material misrepresentation or omission of material fact. Materiality, and that's when you're looking at a stand-alone case. When you have a situation as we have here, where materiality is also being fed in the same count, and the illegality has imported materiality and reasonable consumer, that's why, when you look at these issues from this case, I don't think it requires certifying a question. I do note that the Trump case is being appealed. I don't think it has moved far, but I believe that will be appealed. But I don't think there's a need to do that in deciding this case on whether an injunction that prohibits Quincy from using statements on which he was a critic. I don't think you have to go to the Court of Appeals to deal with those issues. I guess I reserved a couple. Thank you. Thank you. Thank you. Good morning. Chief Judge, may it please the Court, Michael DeLue on behalf of Mark Underwood. Under the long straw, I get to argue three personal jurisdiction arguments today. I'm worthy appellant on one of them, the 13B issue on the FTC Act, and the appellee on the other. So I've reserved time at the end to address the other two issues. But what I want to address now is the 13B issue. And we believe that the Court below erred in finding that the FTC had, the Court had personal jurisdiction over Mark Underwood based on 13B of the FTC Act. The relevant language is that any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under Section 1391 of Title 28. There's then an interest of justice. Nationwide services process. Nationwide services process. That's what happened. So the last part of, yes, the last part of 13B says in any suit under this section, process may be served on any person, partnership, or corporation, wherever it may be found. But that part of it has to be read with the rest of that paragraph. And the beginning of that paragraph describes where venue is proper. Venue is proper where a person, partnership, or corporation resides or transacts business, or where venue is otherwise proper under 1391. The middle part of that is the interest of justice provision, which essentially applies where there is no venue where everybody can be brought in. It's like the retail interest of justice. That's your interpretation of that provision. Correct. But if we were to disagree with you about that, wouldn't that essentially resolve your personal jurisdiction claim to 13B? I mean, if the interest of justice provision is broader than you argue, don't you have a problem? I would say yes, but I think that's a hard stretch to read the statute that way because I'm just trying to understand my decision. So I'm saying even if we read your if we accept your first argument that you really need venue, you could still have a problem with the interest of justice. Sure, except the one exception to that is that the FTC didn't raise that below as a reason for they've thrown it at the end of their brief year, but they didn't raise it below, so we'd say that that would be a waived argument that the FTC cannot raise that somehow the interest of justice. Also, there was no showing of the interest of justice. There was no determination by the court that there was an interest of justice. But the plain meaning of the statute clearly requires that the nationwide service of process is predicated on the venue provision being satisfied first, much like this court determined in the Clayton Act under Section 12 of the Clayton Act. There is no reason to read it in any other way and the district court erred in Well, there may be. I mean it's not exactly like the Clayton Act. We have the two separate sentences. Right. There's two separate sentences, but the the logical reading of it, first of all, it says where the case can be filed, where it can be commenced, and then you have to file a case before you can serve it. So you file a case and then in any suit under this section, you can serve anywhere. So that is pretty clear indication that Congress meant that the venue provision had to be satisfied. Which again, this court it's not exactly like the Clayton Act, but I think that it's every bit as compelling a reason that this court gave in Goldwar and in Daniel that they would read this here. In fact, while the court compared it to RICO, this court before the Daniel case in P.T. United actually held that the interest of justice provision in RICO had to be satisfied before personal jurisdiction could be asserted. So that P.T. United case, the court held that even in RICO, which is used as an example of a very broad personal jurisdiction and national service of process, even there the court determined that and the district court did a full analysis of it, that venue had to be met. So in the interest of justice, they had to show that everybody couldn't be brought into the venue and only then could nationwide service of process be used. And in fact in that case, the court determined, Judge Codall determined that there was another venue where everybody could have been properly venued and dismissed the claim against two defendants that weren't properly served on personal jurisdiction grounds, not on venue grounds. So we also in addition to the plain language, which I think is compelling, we think the comparison to section 12 is important. We think that the surplusage argument, which the Seventh Circuit has dealt with extensively in its analysis here in the Seventh Circuit case that we cited that the surplusage argument makes sense. If that nationwide service was the independent, then a big chunk of the rest of the statute would be irrelevant and would be surplusage, which is courts obviously don't like to read statutes as having surplusage. You're supposed to give full meaning to every part of the statute. We think the legislative history and how the FTC Act was expanded for venue, which we've cited in our brief and gave examples, that also fully supports it. We understand our preferences that the court decided on plain language because that's easiest. But that's our position on 13b. I'll sit down and get back up later and talk about personal jurisdiction where we think that the court correctly dismissed on lack of personal jurisdiction under long arm and correctly decided that the concept of pendant party personal jurisdiction did not confer jurisdiction over Mr. Underwood as well. Mr. Underwood is from Wisconsin.  That's true. By the way, Wisconsin is the venue where everybody could have been brought properly. The FTC could have gone out. The New York What is your best case with respect to this venue? You mentioned the Slaten Act. What is the best case that you have to suggest that the FTC having served your client and obviously with the existence of Nationwide Service Process still needs to consider or is bound by or is limited by this venue Right. The only and my friend will correct me if I'm wrong, but I think the only cases that we've seen that have actually addressed it in the FTC context are two district court opinions from the District of Columbia and those cases both analyzed it and said that one must also interpret the Nationwide Service Process in Section 13b to be predicated on the availability of venue and so that's FTC versus HCA Healthcare and FTC versus Mallet. Those are the two cases that have addressed it in the FTC context. We think that the Clayton Act, we think the differences between this and the Clayton Act are minimal and we think even the reading of RICO that this court has given in PT United also supports our position. Thank you. Good morning, Your Honor. May it please the Court. Matthew Hoffman for the FTC. I'm going to focus on the scope of the injunction issues and I'll turn to Ms. Dunderwood and I think Ms. Coco from the New York Attorney General's Office will address the New York law issues. As to the scope of the injunction, District Court properly enjoined all eight of the challenged advertising claims. The jury here found that none of these claims were supported by competent and reliable scientific evidence which means they were all misleading under the FTC Act. And it found that two of those statements were material. Now, we would agree that materiality is an element that needs to be established to show a violation but a violation was shown here as the two of the statements. Once there's a violation, the Supreme Court has said, once someone is caught violating the Act, they need to expect some fencing in and a District Court can properly enjoin any conduct that is reasonably related to the unlawful conduct whether or not that conduct might be lawful standing on its own. So I think my friend here is confusing the question of was there a finding of those statements that violate the FTC Act with the question of can they properly be enjoined once a violation has been found? And the answer to that question under a host of cases including... So your view is that the two statements and the finding of materiality as to those can be the basis for pursuant to this fencing in idea or concept can be the basis for broad injunctive relief that encompasses all the statements. That's correct. So once there's a violation, the District Court is entitled to go beyond simply enjoining the particular conduct that was found to violate it can enjoin anything that's reasonably related to that. Again, the key cases there are Supreme Court's decision in National Lead which makes very clear that you can enjoin conduct standing alone would not be unlawful. The Colgate-Palmolive case and then this Court's decision in Bristol-Myers. What is the argument exactly that shows us that these statements are reasonably related? The glaring difference between the two and the other six is the specific reference to age in the two. Otherwise there are similar sorts of statements but how do we know that the fencing in doctrine is appropriate? It's something that the District Court has discretion over and the District Court concluded that they all made similar statements regarding memory or cognition, not identical statements but similar and that they were all found to be misleading. That is, these were statements that would mislead a reasonable consumer. On the question of materiality although the District Court did once use that word acquitted, the jury here did not find that these statements were lawful under all circumstances. The jury evaluated the statements in the context of the record before it which focused very heavily on ads targeted towards the elderly and in that context you can see why the jury might have focused on the age-related claims but materiality is context dependent so if Quincy is making these ads targeted towards a different audience college students, toddlers I don't know the kinds of statements that misleading statements might well be material in that context and so the District Court can reasonably say that these statements which are misleading to a reasonable consumer are close enough to the kinds of things that were found to be misleading material that I can properly enjoin them. And this is an abuse of discretion review. The court has broad authority to make that determination. I'm sorry let me just make sure that I understand I thought that I did understand I take it you're saying this is only pursuant or only in the context of this Fentonian approach or doctrine there are statements that can be determined by the jury not to be material but to be without substantiation for example that can nevertheless lead to relief. That's right the but only if only if there are there's one or more other statements that are found to be material that's right and this is an unusual form of injunction I would say I mean typically in these cases what the court will do is enjoin any statements regarding acts that are unsubstantiated in this case the court tied it to the particular statements that were at issue but the injunction can be much once a violation is found the injunction can be broader than the specific conduct that's found to violate the act so the scope of the remedy is not determined by the precise conduct found to be unlawful and again that's very well established in the Supreme Court's case law and this court's case law I didn't hear my friend say anything about the similar statement language our position is that that argument was not raised in the district court and it really would not be fair for the district court for it to be addressed on appeal at this point but we think that the state the just remind me unfair to Mr. Escobar so the claims were section 5, section 12 so let me clarify what happened here so of course the case was tried to the jury under New York law the FTC we were not you know although we didn't have prevented the jury was not told that FTC was a party we didn't open or close we did assist in the case and so the jury was instructed under New York law not under the FTC act at all our claims were brought under sections 5 and 12 and the district court following the trial found that the jury's verdict as to the jury's verdict was dispositive of the FTC section 5 the factual findings were dispositive and the jury was instructed on materiality and misleading element in a manner that was consistent with the FTC act I want to be clear that our view is not necessarily that the New York law and the FTC act are mirror images for all purposes but in this case the materiality instruction the materiality instruction and the materiality instruction and the misleading instruction were consistent with the FTC act and the court properly found a violation based on that and having found a violation the court properly enjoined all eight of the statements because they're all really very similar and Quincy shouldn't be allowed to go around making statements that are misleading to a reasonable consumer the jury findings were that none of the statements were supported by competent and reliable scientific evidence two were materially misleading but all eight have a capacity or tendency to deceive yes the jury did find that that's under the New York executive law and the court did look at that but the you know we don't need that in order to justify the FTC act violation we don't need that part to justify application of policing is it inappropriate to consider it in exercising discretion I think it's something the court can probably consider in exercising discretion the court has very broad discretion so and you know the the fact that this is a statement that is out there that is you know misleading the public about a very widely advertised nutritional supplement is a danger and the court could properly address that danger and take action to mitigate it so given that this is a discretion standard I just don't think that that Quincy has come close to showing that he's a discretion here I'll turn to Mr. Underwood briefly if there are no other questions you know and I think Mr. Underwood's argument relies largely on the court's reading of the Clayton Act in the Daniel case but the statutory language there is quite different in that case there is one sentence which first establishes a venue and then says in such cases there will be nationwide service of process so in such cases refers back to refers back to our statute here the FTC Act doesn't say in such cases it says in any case and it's not part of the same sentence it's separated out and in fact the sentence in between it is about exceptions to venue so I mean I think that's really dispositive here again there is nationwide service of process and there's no dispute obviously that Mr. Underwood has contacts with the United States that's all you need to support this I think his argument is sort of a confused venue with personal jurisdiction I see my time I actually have some time do you have any further questions? Well can you say a little bit about also the application of the Supreme Court decision in Fold? Well so Fold I think makes clear that when you're dealing with a nationwide service of process issue that the 14th amendment minimum contact analysis does not apply because it's talking about the 5th amendment rather than the 14th amendment Fold I don't think fully answers the question of what if any due process limitations do apply under the 5th amendment there are different considerations that would apply to the 14th amendment due process clause but it doesn't But at the very least it suggests that if you've got a minimum contact with the U.S. that's enough I think there's no question that if you have minimum contact with the United States that should be enough Is that disputed here? It's not disputed I think I did not hear any dispute as to that and I think we just heard that it's under what lives in Madison so that's in the United States And just on the reading of 13b if we were to be less certain than you are about the similarity between this act, between 13b and the Retail Act as opposed to the Clayton Act the interest of justice provision wouldn't that clearly apply in this context anyway? Yeah I think it would apply it's something that the court never had to deal with I mean this is an odd situation because of course if Mr. Underwood had a problem with venue he could have moved to dismiss for improper venue he didn't and therefore waived any venue challenge I think venue is proper here I didn't hear any argument as to why venue would not be proper. I mean the fact that he lives in Madison but ran a corporation that directly is advertising towards New York and a lot of the conduct took place here that's enough to establish a venue so I'm not quite sure why this argument is being given the prominence that it is. I would also add that Mr. Underwood as a controlled person would be bound by the injunction under Rule 65 anyway so we would ask that the injunction be  May it please the court Sarah Coco for the State of New York Your Honor I apologize for any confusion I would like to request two minutes of rebuttal on my cross appeal. Thank you I'd like to start with section 6312 before turning to my arguments on personal jurisdiction, New York's general business law and monetary relief and I'm going to address the standalone fraud issue but before that I just want to touch on materiality and address what my friend said about materiality and people versus Trump and that case does not support the conclusion that materiality is required when the deceptive conduct is aimed at consumers so all three of the opinions in people versus Trump specifically say that materiality is not an element when the conduct is aimed at ordinary consumers which is what happened here and they're saying to the extent that case supports the conclusion that materiality may sometimes be an element of a standalone fraud claim it's only when it's an unusually sophisticated counterparty like Deutsche Bank in that case but for example Justice Moulton in the lead opinion says the general electric standard of an ignorant and credulous consumer would apply when it's trained towards an ordinary consumer so there's no argument that materiality is an element of the section 6312 fraud claim at issue in this case the jury was properly instructed that it's the capacity or tendency to deceive standard and it's a credulous consumer so all of that was correct and the jury here properly found that all eight of these challenge statements violate New York's executive law section 6312 and the jury's only argument on appeal is that it doesn't create a standalone cause of action for fraud and that is inconsistent with the text of the statute, it's inconsistent with the legislative history, it's inconsistent with decades of appellate precedent in New York and so if the court has any doubts we would agree that certification would be appropriate but I think there is plainly enough here to decide the issue in favor of the Attorney General and conclude that there is a standalone fraud claim so just beginning with the text it has all of the elements of a cause of action for fraud so it specifically defines the fraudulent conduct that it prohibits, it has a definition of fraud in the statute I'm just trying to follow you what are you quoting from now? Section 6312, so the New York law at issue, that's 6312 the executive law not the general business law your honor that's a separate, that's 349, that's a separate yeah so we have our claims under section 6312 which is an empty fraud statute and then we also have general business law 349 which is consumer protection so I'm just focusing on 6312 and the standalone fraud claim and as I said the statute itself has a definition of fraud and under Quincy's reading of the statute that entire definition of fraud is serving no purpose, there's no reason for it to be in the statute but there is a definition of fraud so the statute defines the misconduct that is fraudulent it identifies when liability is triggered, that's when the fraudulent conduct is repeated or persistent and it's in the conduct of business, it authorizes the attorney general to commence an action or proceeding and it specifies the forms of release that the attorney general may seek, that's the text of the statute and as Joe said earlier it's a disjunctive statute that authorizes the cause of action for fraud or illegality, that's a disjunctive or, and these are two separate prongs, I also want to be clear that we did plead both in the alternative here, that's in the joint appendix at 103, so there's no dispute that there was a standalone fraud claim here and that's what the jury was instructed on, they were standard. Our interpretation... Were they also instructed on illegality? No your honor, by the time we got to the jury trial we were only pursuing the fraud prong, so they weren't, there is a little bit of confusion in the jury instructions which my friend points out in terms of how the judge told the jury to proceed but the verdict sheet is clear that they should reach all the claims and that's what we did, so I think we're the party that would have objected, we did object to that jury instruction but it didn't lead to any incorrectness in the verdict sheet here and so we're asking the court to hold the verdict on that. I also want to just briefly address the legislative history so Quincy has incorrect the statute as initially enacted, only created the same remedy for unincorporated partnerships and associations that already existed for corporations that's their argument, that's not correct as the initial enactment but even if you thought they were right on that, which they're not then the legislature has repeatedly amended the statute including in 1965 when they put in that definition of fraud and that's the definition of fraud that comes from the Martin Act and it's already been interpreted at this time to create a standalone cause of action for fraud that goes well beyond common law fraud, so the idea that there's no cause of action for common law fraud is not supported by the text or legislative history and it's also not supported by appellate precedent, so the only appellate decision in New York that has specifically addressed this argument that they're making firmly rejected it and said that it would limit the authority that's Trump entrepreneur initiative from the first department, it said that it would limit authority that the Attorney General has long been exercising and that's because decades of appellate precedent recognize that these standalone fraud claims can go forward for example Greenberg from the New York Court of Appeals, the other cases that Quincy is relying on so there's Frink and Wolowitz which are dealing with illegality claims just on the face and I think the court isn't really addressing this issue and it's just doing a misreading of Cortel so I would urge the court to go back to the New York Court of Appeals opinion in Cortel which supports our position and then one source I think is just wrongly decided, it's relying on Charles Schwab which is the first department decision that was overturned in Trump entrepreneur initiative so there's no appellate precedent supporting Quincy's argument and I do want to just briefly address Cortel and Credit Suisse. The first department case earlier when Schneiderman, is that the... There's Charles Schwab which is the case that was overturned by Trump entrepreneur initiative Was that three years? Am I remembering that correctly? I'm sorry your honor. How long between the first department case that was overturned and the decision in Trump enterprise? Oh you're really testing me. I think maybe five years it was not very long. So one source comes out in the intervening time while Charles Schwab is still good law. That's what the fourth department was relying on. So just very briefly on Cortel the language of Cortel recognizes that 6312 creates a standalone cause of action for fraud in certain circumstances and it cites cases where that happened. For example, I urge the court to look at that case as a standalone fraud case. If you want a case where the court concluded that a standalone fraud claim could go forward but a GBL 349 claim could not go forward, that's Northern Leasing. I think my friend called us for not giving you a case. That's a motion to dismiss decision in Northern Leasing from 2019 which specifically has that scenario. And that's an appellate division case? That's an appellate division case. Which department? That's also the first department your honor. These cases are often brought in the first department. And just very briefly on credit tweets, that also doesn't support Quincy's argument that's also a case where there's a standalone fraud claim. It's about the statute of limitations for fraud there and the dispute at that time was whether the attorney general has pled all the elements of common law fraud because that would allow us to use the longer statute of limitations. That's no longer an issue now that the legislature has amended the statute of limitations. So that's my argument on section 6312. As I said, if the court thinks there is a concern here, we would agree that certification would be appropriate but we think there's plainly enough the standard you know, this court must follow the appellate division decision unless there's persuasive data that the New York Court of Appeals would decide this differently and there's nothing remotely close to that here. So just turning to the general business law claim, the jury correctly found that all eight of the challenge statements here are misleading because they're not supported by confident and reliable scientific evidence. So that's the definition in the case law of misleading that's amply supported. So maybe I'll just turn directly to our cross appeal as to why we think all eight of the challenge statements are also material. Materiality is an objective standard and it just means that these statements would have influenced the decision making of a reasonable consumer. And here there's nothing in the trial record to support the conclusion that these statements aren't material. Quincy plainly intends them to be material and there's nothing to support the conclusion that they wouldn't be. And in addition, a presumption of materiality applies to these claims. And that was not rebutted by anything at trial. There's no evidence, there's no argument to rebut that presumption of materiality which applies to health claims and extract claims. Where does that come from, the presumption? That comes from the 1983 FTC Act on deception and it applies to general business law 349, the New York law, because that is modeled on the FTC Act claims and it's well established in the New York law that we look to the interpretation of the FTC Act in deciding issues of New York law. And I will note that Quincy never objected to the presumption. That was in the jury instructions. They've waived any arguments that the presumption would not apply to New York law. Turning to personal jurisdiction, Your Honor, if I might just very briefly. I'm sorry, Your Honor. Do you want to use some of that time now or come back? I'll come back. Okay. Fencing in requires a connection between the adjudicated illegal conduct and the conduct to be fenced in. That's what the Supreme Court has said. That's what this court has said over the 70 years of this doctrine being used. That connection is severed completely when the fenced in conduct has gone through a jury trial and the jury found no liability. So you cannot fence in conduct as to which there is no liability or possibility of liability. That's what the court did here. It stretched fencing in to include conduct as to which Quincy was not liable. And this court in the ITT case explained how you cannot have a connection between acquitted conduct and the conduct that has been... So what your friend on the other side says is that actually once there are some statements, and I understand, I think, your argument that are clearly found by the jury to meet all the requisite thresholds, and I don't think that you disagree with respect to the two statements that the jury found that those were material misstatements. Then it has very broad discretion to, I guess, under this fencing in doctrine, more broadly speaking, it has very broad discretion to fashion relief, and I could understand the argument if there was no connection between the six statements and the two statements that the jury found, but here there is an obvious connection. Now they might be different in type and different in their import, but they're obviously all connected as part of a advertising messaging scheme. The court has discretion to look at the adjudicated illegal conduct and then extend the injunction or the cease and desist to other illegal conduct. That's the point, and there's no case that says you can extend it to claims where there is no illegality. In fact, in the IPP case, the court, this court, said that the problem with the order there was that it had covered wrongs not found to have been committed, and it explained that the unreasonableness of the order was underscored because the petitioners had been exonerated of the charges that were fenced in. And consider the implications of fencing in conduct that is not illegal. How is it exoneration to say that these statements were unsubstantiated? So that's like saying, you've been charged, sir, with murder. You're acquitted of murder, but there's I'm sorry, you're actually convicted of murder, but there are these other manslaughter. We fit into the acquitted of murder category. But I think that when the jury in the context of the FTC claim finds that the statements were not substantiated, yes, maybe, and obviously you're right, that they didn't find this a reality, but it is not a small thing for the jury to find that the other statements were not substantiated. So on the substantiation point, that provides an affirmative defense that we allege, an affirmative defense, because if we show that the scientific evidence substantiated all the claims, that's the end of the case. The fact that the jury did not agree with us and did not help us with that affirmative defense does not relieve them of their obligations to establish all the elements of the claims. And here, when you start fencing in no liability, the implications of that are pretty serious, because it starts crashing into First Amendment problems, due process problems. So then what is the content of the fencing in doctrine in your estimation? And when you look at the cases, for example, there's a Sears case. The illegal conduct was an advertising campaign that was false as to one's appliance. They extended it to cover other appliances that were using the same false conduct. And when you look at all the case law on fencing in, it extends illegal conduct that was adjudicated to other illegal conduct. It does not, there's not a single case that says you can fence in claims as to which there was no liability. On the point, two points on the executive law section. First of all, well, actually, on the FTC argument about a presumption of materiality, the judge instructed the jury on the presumption. He described what that meant. He described what kind of things could rebut the presumption. And the jury heard lots of evidence about all kinds of things, including disclaimers and the scientific evidence. And the scientific evidence may not write to the level of getting us completely out of the case, but it became part of the overall record for the judge properly instructed on the presumption. And we can only infer that the jury found that the presumption had been rebutted. The other point I'll make on the injunction, it is now extended nationwide through the use of a New York statute. It is 6312 that is being used to extend the reach of this. 6312 does not have an extraterritorial application at all. And in fact, it's a unique statute that's going to run up against state statutes around the country about what constitutes misleading advertising. So the bottom line is the errors are punishment without liability, fencing in claims that were not liable, and 6312 being used beyond what its explicit terms say, go and get a preliminary injunction quickly. They never sought a preliminary injunction in this case. Thank you. Thank you. The best laid plans, I thought I would be responding to a friend's argument on personal jurisdiction. They haven't happened yet, but I'll persevere. So Judge Levinson, you brought up the point about the interest of justice. As I said earlier, that provision doesn't apply here. That provision applies where there is no district where everybody can be brought. Here there clearly was one which is Wisconsin. I would suggest that expanding that portion of it beyond that... Can you just respond to the argument that was also made in the briefing about the difference in the language in such cases as opposed to in any case? Yeah, so the difference between... I actually don't think there's much significant difference between in such cases and any case under this section. I mean, it's still referring to that section, 13B. That's what the Nationwide Service of Process provision refers to, and as further evidence of that, 13A, which is a different provision, has its own venue and service of process provisions. That language in 13B clearly refers to 13B under this section. And under this section, the only place you were allowed to file suit was a place where the defendant lived, transacted business, or were otherwise... service was otherwise available under the federal statute. Quickly, my friend also said he didn't know why this was even an issue. This has been clear from the outset. We've objected to jurisdiction under 13B from the very beginning of this case several hundred years ago. I think seven years ago or eight years ago. And the basis that the FCC has always provided for why it had jurisdiction over Mr. Underwood was Nationwide Service of Process under 13B. Mr. Underwood does not live in New York. He does not do business in New York. He's not otherwise subject to personal jurisdiction under 1391. And the FCC knows that. That's why it's always said that this is proper under Nationwide Service of Process. Well, of course, it doesn't have to show any of that, is there, right, of that? New York is under a different application. Right, but respectfully, I believe my friend is wrong about Nationwide Service of Process. Quickly on the other jurisdictional issues. The district court... May I ask you another question about the Nationwide Service of Process provision 13B? Your friend says, well, they could have moved to dismiss for lack of venue, but they didn't. Is that correct? And if so, what are we to make of that? Well, I don't think there's anything to make of that because I think that the more fundamental flaw is a lack of personal jurisdiction, and that's what we moved on. That's similar to what this court... Did you make the argument about venue? Did you move on that basis? We moved on the basis that venue was improper, and therefore there was no personal jurisdiction. Based on the lack of... On the lack of personal jurisdiction. That's what the basis was. They never had personal jurisdiction, and that's a more fundamental flaw, which is what Judge Codal found in the P.T. United case. When you moved on the basis that there was no personal jurisdiction, did you say there is no venue here? This is the improper venue. It should be in Madison. I think that the answer to your question is we moved under 12b2, which is lack of personal jurisdiction. We didn't move under 12b3, improper venue, but we didn't need to. Again, the P.T. United case is another case in the RICO context where the plaintiffs moved on lack of personal jurisdiction in Judge Codal, and this court then affirmed the dismissal of those defendants on the basis that personal jurisdiction was not there because the interest of justice provision was not satisfied. If I could quickly turn to the other... Pardon me? That's right. I'm sorry. I have to respond. But I promise you, members of the House, I will be quick. I will use that. That's terrific. Under New York long-arm jurisdiction, the district court correctly dismissed the claims by the New York Attorney General against Mr. Underwood because the New York Attorney General produced no evidence at all after a civil investigation and then civil discovery, including multiple defendants. Let me understand this. He's the CEO of a company, and I think if I read the deposition transcript correctly, he has some oversight over the marketing of the product that is issued. Well, you say some oversight. He's part of committees, but he's not a final decision-maker. He's not a final decision-maker. But the people who are decision-makers with respect to marketing, ultimately, they report to him. Ultimately, they do just by virtue of it being a company, yes. And he is aware that there is a marketing campaign that's... Every state, but that includes New York. Is that correct? He's aware that there are national marketing campaigns, absolutely, but there's nothing that links any of his activities to New York-directed conduct. And in order to impute... You would have to impute New York-directed conduct to him. This is very different than your honors decision in EMI where... Yeah, so that's why I'm asking these questions. I really have a little bit of a hard time distinguishing what Mr. Underwood did in his role from what Mr. Robertson did in EMI. Yeah, so let me give you my understanding. You wrote the decision, of course, but let me... I forgot that. Understood. Understood your honor. The main difference is that Mr. Robertson in that case was there was testimony that he was the decision-maker on every decision of the company. It was a small company, and he was the decision-maker on everything. There was unrebutted testimony to that. That was the basis on which the court said, okay, well, if you're the decision-maker on everything and you have a national campaign that goes to New York, well, then that's going to be enough under the agency theory. That's entirely lacking here. Mr. Underwood is not... He is co-founder and president, COO, part of the team that directed national marketing, and he appeared in advertisements himself that aired in New York. Yeah, but that is, I believe, completely inconsistent with the cases in New York, the coast to coast energy, even the description of this theory in Creuter, certainly the Oklahoma firefighters case from this court a couple of years ago and in-ray terrorist attacks may be most important, and then Polanski versus Gelrod in the third department. These cases all say, well, just because you have a position in a company, just because you're a senior executive, you have a title, it doesn't mean that you are the party that has dominion and control over actions in New York. The core part, I mean, I think that this is part of the evidence to the record, the core part of this was the advertising campaign, and that's the success of Fudge's In other words... But there's nothing in the record that shows that he directed that. He was... The testimony is clear, if you look at the record site, and in our reply brief, we addressed the record sites that the New York Attorney General put in, it is nothing close to the kind of control that you have in EMI Christian. It's far more attenuated, it's much closer to in-ray terrorist attacks where Mr. Muhammad was, ran the bank, but had nothing to do... In fact, was connected to the Al-Qaeda accounts, but had nothing to do with New York directed activities. That's the same here. Similar with Oklahoma firefighters, Coast to Coast, I think, is a very compelling case out of the First Department, and Polanski versus Gelrod. This is simply... He's far removed from this, and again, this was not on a pleading stage. This was after... This was on summary judgment after, you know, seven or eight years of discovery. So this was... This is a lot different than what you had in EMI Christian. Briefly, if the court would like to hear about pendant party personal jurisdiction, I don't know if you do or not, but this is a doctrine that the New York Attorney General seeks to use the fact that the SEC had an anchor claim under federal law, and therefore would be able to piggyback its claim into New York, even though it is a different party. And this is a... This is a theory that has never been approved by any circuit court anywhere. That's correct. In the Venegas case and in Canada, the only ones that have considered it have rejected it. It's also the rejection is consistent with Grisselmeyer's quid by the Supreme Court, which says you have to look at party by party, claim by claim analysis when determining personal jurisdiction. I'm way over time. If you have questions about that, I'm happy to answer any further questions. Thank you very much for your time. Thank you. I do have one more question. So I'm looking at page 434 of the record, which is the transcript of the deposition. And I think, and the question is, you are part of the marketing team at Quincy. Can you explain your role and responsibilities as a member of Quincy's marketing team? Sure. I help to lead discussions or participate in discussions. Clearly, with Martello, there was always a bit of presumption of leadership because some of the staff, of course, you know, worked for me. Yeah. I mean, but he goes on to say that he's that... There's just a presumption of control and that he's not, in fact, in control. He's just one of many members of the marketing team. One of many members. I'm one of many members of my chambers. You may have a little more say in the chamber. Well, no, no, actually. So I am one of many... When you say one of many members, some are more equal than others, and that's why the presumption, the presumption, I think, is that he has a real role in marketing. Well, I appreciate the Orwell reference. However, there is no evidence that people... But there's no evidence at all in the record that... There's no testimony from anybody that, yes, we felt that Mr. Underwood's statements, and we followed them. There's nothing like that. They certainly had depositions of other people. And, you know, it's just that, you know, given the amount of time they spent doing discoverings, there's nothing that says that he made final decisions. In fact, quite the opposite. He talks about being a collaborative effort, often involving counsel, outside counsel, often involving outside sources that were placed in the ads. There's simply nothing that relates... that connects Mark Underwood to any New York-related activity at all. And all we're really talking about is national activity, but even there, he's not the Robertson in the EMI Christian case. He's not making all the decisions. He's part of a process. And the title and position, very clearly under New York law, is not enough. And that's all that they have here. Thank you very much. Briefly, if I could just pick up where my friend left off. Under New York's long-arm statute, there is abundant evidence that Underwood exercised control over Quincy's misleading advertising campaign. I just want to start with how large this company is. It's not a huge multinational. This is a company that had 80 employees as of 2022. That's in the Joint Appendix at 171. And it's undisputed that Underwood directed Quincy's research programs and translated scientific data into marketing language, that he did play a leadership role with the marketing team, as Your Honor just alluded to, that he was personally involved in discussions related to print, radio, TV, and digital advertising, that he helped develop messaging to connect with target consumer audience, that he personally approved the packaging for Prevagen, which has the misleading claims on it. That's in the Joint Appendix at 1717. That the director of sales and marketing reported directly to Underwood. And he himself starred in this 30-minute infomercial, which aired in New York, where he makes the misleading statement directly to New York consumers. So we do think this is very like the EMI Christian case, and it's an appropriate exercise of New York's long-arm statute. Is there another case where a CEO himself or herself makes the misleading statements in the forum? Your Honor, I think we do have a case in our brief, and I believe it might be retail software services. I apologize, I don't have it right at my fingertips. It's a corporate officer. I think it's not the CEO. I think it may be that case, and I think that's discussed in our brief. But if there's no further questions on jurisdiction, I'll just turn briefly to our request for monetary relief. And the court issued a motion for a discussion by concluding that there was no evidence to support monetary relief without giving the state the opportunity to present that evidence. So at previous stages in this case, the district court had indicated that there would be a remedies stage. And then the court, we requested discovery on remedies after the jury trial, and the court said hold off on that while we do the post-trial briefing on liability, but go ahead and do your motion for an injunction. So we did the motion for an injunction. The court issued the injunction and concluded summarily that no monetary relief would be appropriate. And it's undisputed that both of the statutes the New York Attorney General is proceeding under... And you didn't have an opportunity to respond to that? Your Honor, we did make a motion to clarify the final judgment to raise this issue, and the district court said, you know, no, this is the only thing we're going to do. We're not going to have a process on monetary relief, which is why we're raising it now in our cross-appeal. And so we're not asking for a judgment. We're just asking this court to remand so that we can present that evidence. And the district court didn't consider the types of issues that courts would normally consider in addressing statutory penalties. And our concern with the injunction here is that if the only remedy for misleading advertising is an injunction, that does create an incentive to use that misleading advertising. It creates an incentive for the industry because you might as well do it until you're told to stop by a court. And that's why there's statutory penalties. Although here, the injunctive relief includes the fact that the company is barred from making any of these representations or, you know, the way that I read it, it's even close to any of those representations. Why? That's very significant, no? Isn't that what you want? I think it is significant, but I also think this is an appropriate case for statutory penalties and disgorgement because one of the purposes of those is deterrence of future conduct. And here, we're not only worried about these eight specific statements. We're worried about any misleading advertising, any statements that are not substantiated by scientific evidence, which all eight of these were. And so monetary penalties prevent this defendant but also others in the dietary supplement industry from doing this type of misleading advertising. Are you arguing that at least the court should specifically address the question and explain why there are none? That's correct, Your Honor. And we would like an opportunity to present briefing on the factors the courts normally consider and a calculation of proposed monetary relief. It's ultimately an abusive discretion review that you're arguing that we don't have enough of an explanation to review the district court's remand. That's exactly correct, Your Honor. So if the district court were to exercise its discretion on remand, I think we could take that decision and decide whether we wanted to seek appeal of it. But here, there's nothing for us to appeal because there's nothing in the record on this issue. And it is routine in cases like this. It's quite anomalous in the state's experience to be awarded no monetary relief in a case brought under these statutes. How do we know that? Your Honor, we cite a number of New York cases in our brief where very significant disgorgement and statutory penalties were awarded in the millions of dollars. So that's really quite routine. Thank you, Your Honor. Thank you all. Very helpful. Well argued. And we will take the matter under advisory.